IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Respondent,               No. CR S-98-205 GEB KJM P

    vs.

DAVID BOWMAN,

        Movant.                  FINDINGS AND RECOMMENDATIONS

                              /

        Movant, a federal prisoner represented by counsel, challenges his sentence under 28 U.S.C. § 2255. On January 29, 2002, movant was found guilty of fifteen counts of mail fraud. On December 20, 2002, he was sentenced to 108 months in prison. The instant motion to vacate, set aside, or correct his sentence was filed on February 20, 2004.

I. Factual and Procedural Background

        Movant was indicted for mail fraud on May 1, 1998. The single count in the original indictment alleged that on or about March 3, 1998, movant caused an investment account application and related material to be sent by U.S. Mail from "National Finance Center, Inc." in Sausalito, California to an investor at "15 Lookout Ct., Sacramento, CA."

/////

/////

1

On December 18, 1998, the government filed a superseding indictment, alleging seventeen counts of mail fraud against movant under 18 U.S.C. § 1341.[1]  The government alleged the time frame of the fraud was August 1996 to August 28, 1998.  The alleged fraud consisted of movant's causing noteholders to place money in his company, the Kentfield Group (hereafter "TKG"), in return for which the noteholders would receive a secured note backed by an "insurance guarantee bond."  The government alleged movant negotiated with "a person in Florida" who would, for a fee, provide documents purportedly showing that the TKG notes were guaranteed by insurance performance bonds, which were in turn "guaranteed by re-insurance through Lloyd's of London."  The government further charged that movant then made fraudulent representations to individuals that he was able to sell them notes issued by TKG backed by insurance performance bonds that were guaranteed by re-insurance coverage from Lloyd's of London.

Counts 1, 2, and 3 charged movant with the mailing of literature and applications with respect to notes backed by bonds.  Counts 4 through 17 charged movant with the mailing of a May 25, 1998 letter to fourteen specifically identified noteholders assuring the investors that despite the indictment of movant, their investment in TKG was safe.  This letter was referred to during trial (and hereafter) as the May 25, 1998 "lulling letter."  See, e.g., RT 19.

The first attorney retained by movant, Paul Meltzer, was allowed to withdraw his representation on March 10, 1999, and attorney Donald Schwartz was substituted as counsel on March 16, 1999.  In April 1999, attorney Dwight Samuel was substituted for Donald Schwartz; Samuel represented movant through trial.

/////
/////
/////

---

[1] The indictment is captioned "VIOLATION: 18 U.S.C. § 1341 - Mail Fraud (18 Counts)."  The number of counts in the caption is a typo as the document charged only 17 counts.

On January 29, 2002, following a seven-day trial, a jury found the movant guilty of fifteen counts of mail fraud; the jury was not able to reach a verdict on counts one or three. RT 1769-1774. The district judge sentenced the movant to 108 months in prison on December 20, 2002.

In the § 2255 motion before this court, movant sets out two grounds for relief: (1) ineffective assistance of trial counsel based on four specific alleged deficiencies; and (2) trial counsel's cumulative error resulting in denial of movant's Sixth Amendment right to effective assistance of counsel. To allow full development of the factual grounds for his motion, movant waived his attorney-client privilege and Samuel was deposed on December 17, 2004.

II. <u>Analysis of Ground One: Ineffective Assistance of Counsel</u>

Movant alleges he received ineffective assistance from trial counsel in four specific areas: (1) counsel's failure to oppose the government's introduction of the Capital Preservation Fund (hereafter "CPF") evidence; (2) counsel's failure to develop and present a good faith reliance on counsel defense relating to the May 25, 1998 lulling letter to TKG noteholders; (3) counsel's failure to develop and present evidence that movant attempted to secure a new guarantor for TKG notes; and (4) counsel's failure to adequately prepare and/or utilize defense witnesses.

In examining ineffective assistance of counsel claims, the court employs the familiar two-step <u>Strickland</u> analysis. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). With respect to the first step, a petitioner must carry the burden to demonstrate that his counsel's performance was so deficient that it "fell below an objective standard of reasonableness." <u>Id.</u> at 688. The assessment must be made "from the counsel's perspective at the time," so as "to eliminate the distorting effects of hindsight." <u>Id.</u> at 689. Further, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and hence "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u>

/////

If petitioner is able to establish his counsel's deficient performance, the court must decide whether that performance resulted in actual prejudice. Id. at 687. The question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." Id. at 694. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697). While individual deficiencies may not by themselves meet the prejudice standard set out by Strickland, the Ninth Circuit has held that deficiencies may, when considered cumulatively, constitute sufficient prejudice to justify granting collateral relief. See Harris v. Wood, 64 F.3d 1432, 1438-39 (9th Cir. 1995).

A. Failure to Oppose the Introduction of CPF Evidence

On December 26, 2001, the government filed a motion seeking permission to introduce the CPF evidence at trial. In that motion, the government proffered the following facts to support the admission of the evidence:

> (1) the TKG investment fraud scheme devised by defendant involved promissory notes, on their face paying between 10 and 12 percent interest annually;
>
> (2) defendant represented to TKG investors that the principal and interest on the notes were guaranteed by an entity called Berkston Insurance, an entity said to be "wholly reinsured by Lloyd's of London as Surety;"
>
> (3) in 1995 and 1996, immediately prior to incorporating TKG in early 1997, defendant managed CPF, which also solicited money from investors;
>
> (4) defendant made representations, as with the TKG notes, that CPF investments were fully backed performance bonds or guarantees (including references to Berkston Insurance and Lloyd's of London);

4

>(5) an early TKG investor received a letter from defendant welcoming her to "The Capital Preservation Fund;"
>
>(6) TKG financial records would show that defendant used TKG investor funds to make payments to CPF investors and contributors (in at least 4 instances); and
>
>(7) defendant cited CPF in promotional materials describing his experience to TKG investors.

See Docket No. 52. Based on this proffer, the government argued that CPF evidence should be admissible at trial because it was either "inextricably intertwined" with the charged conduct or, in the alternative, similar "other act" evidence admissible under Federal Rule of Evidence 404(b).

On January 7, 2002, trial counsel filed the following response to the government's motion: "Defendant, David Bowman, by and through his appointed attorney, Dwight M. Samuel, has reviewed the government's motion in limine and has no response." Docket No. 59.

The district judge held a hearing on the motion on January 7, 2002. When the court inquired as to what the meaning of the "no response" response was, Samuel explained his position as follows:

>That simply means I'm going to submit the matter to the Court. I didn't want to take up the Court's time by referring to things that I didn't think were appropriate, so I'm just going to submit it and let the Court make its ruling.

RT 1. The court went on to grant the government's motion, stating on the record that the proffer had sufficiently demonstrated that TKG and CPF were "inextricably intertwined." RT 4. The court also noted that admission of the CPF evidence would likewise be appropriate under Rule 404(b). RT 4-5.

This court need not decide whether trial counsel's "no response" response was deficient performance, because movant has not carried the burden of demonstrating prejudice. The CPF evidence was admissible on the "inextricably intertwined" ground, based on the proffer made by the government and consistent with Ninth Circuit case law. See United States v. Sayakhom, 186 F.3d 928, 937-38 (9th Cir. 1999) (finding two mail fraud schemes inextricably

intertwined where the second scheme was a continuation of the first, after the first scheme failed; defendant used the names of the two companies "interchangeably" and appeared to commingle their funds), amended by 197 F.3d 959 (9th Cir. 1999).

      Movant's current counsel argues that trial counsel never comprehended the separate and district concepts of whether CPF and TKG were "inextricably intertwined," and whether the government could introduce CPF evidence as "prior bad acts" under Federal Rule of Evidence 404(b). Traverse at 12-19 & n.11. In particular, movant now argues counsel should have contested the motion by preparing a comparison between CPF and TKG business models. Traverse at 21-22, 28-29 & n.20. However, this challenge, even if effective, could only affect the admission of CPF evidence as "other acts" evidence under Federal Rule of Evidence 404(b). At the same time, there is no reason apparent from the record to believe that either a business model comparison, or any other proffer by trial counsel, could have meaningfully refuted the facts that were the foundation for finding that TKG was merely a continuance of CPF and thus "inextricably intertwined": the facts of a TKG investor receiving CPF mail, the commingling of TKG and CPF funds and references to movant's CPF experience advertised in TKG promotional materials. The CPF evidence would have been properly admitted regardless of any challenge trial counsel could reasonably have made because evidence admitted as "inextricably intertwined" is not subject to the constraints of Rule 404(b).[2] See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992). Therefore, movant was not prejudiced by trial

/////

---

[2] The only constraint on the admission of "inextricably intertwined" evidence is Federal Rule of Evidence 403. United States v. Griffin, 493 F.3d 856, 867 (7th Cir. 2007); see also United States v. Andaverde, 64 F.3d 1305, 1314 (9th Cir. 1995). Additionally, the admission of "inextricably intertwined" evidence does not involve the same policy concerns about the prejudicial effect of propensity evidence that inform the Rule 403 balancing of "other acts" evidence. See Ramirez-Jiminez, 967 F.2d at 1327. In his traverse, movant has merely made conclusory assertions that admission of CPF evidence would be more prejudicial than probative. See Traverse at 29 n.20. On the whole, there is nothing in the record to suggest that trial counsel could have successfully challenged the admission of "inextricably intertwined" CPF evidence on Rule 403 grounds.

counsel's "no response" response and did not receive ineffective assistance of counsel in this instance.

B. <u>Failure to Develop and Present a "Good Faith Reliance on Counsel" Defense</u>

Movant next asserts he was denied effective assistance of counsel because trial counsel did not properly develop and present a "good faith reliance on counsel" defense to the fourteen counts related to the May 25, 1998 lulling letter. Movant alleges the letter was prepared in reliance on the advice of two attorneys he retained following the May 1, 1998 single count indictment. Traverse at 34. Jim McManis was the first attorney contacted by movant; he represented movant in TKG-related civil matters. <u>Id.</u> McManis referred the federal criminal case to Paul Meltzer who first appeared as movant's federal criminal defense attorney on May 5, 1998. <u>Id.</u>

In a sworn declaration filed with his traverse, movant states that during May 1998, several meetings took place with both attorneys present, where various aspects of the legal problems facing movant and TKG were discussed in detail. <u>Id.</u> at 35-36. At one of the meetings towards the end of the month, movant raised the issue of sending a letter to TKG noteholders to keep them informed of the situation. <u>Id.</u> at 37. Movant states it was agreed he would draft the letter and fax a copy to both lawyers, who would make any appropriate changes. <u>Id.</u> Once the amended copies were returned, movant would prepare a final version in compliance with the attorneys' corrections and the final corrected version would be sent to the noteholders. <u>Id.</u> Consistent with these discussions, movant drafted a letter and faxed it to both attorneys on May 21, 1998. <u>See</u> Pet., Ex. U. On May 22, 1998, movant received a corrected copy of the draft letter from McManis. <u>Id.</u>, Ex. V. On May 25, 1998, movant sent the letter in exact compliance with the corrections and changes made by McManis to TKG shareholders. <u>Id.</u>, Ex. W. This May 25, 1998 letter would become the factual foundation for Counts 4 to 17.

/////

/////

7

On December 18, 2001, the government filed a motion to compel discovery based on Federal Rule of Criminal Procedure 16(b)(1)(A). The government argued that because movant intended to present a reliance on advice of counsel defense in his case-in-chief, it was entitled to discovery of the written advice relating to such a defense. If movant failed to comply, the government requested that the court enter an order precluding movant from asserting a defense of reliance on advice of counsel. A hearing on the discovery motion was held before the duty magistrate judge on December 20, 2001. Trial counsel asked the court to give him until December 28, 2001 to provide materials supporting a reliance on counsel's advice defense or be precluded from using it. See Pet., Ex. H at 2. The court issued an order confirming those terms on December 24, 2001. Trial counsel never turned over any materials responsive to that order; in his response filed on January 7, 2002, to the government's trial brief he stated, "[a]s to the good faith of defendant and the use of attorneys, defendant is not intending on calling any attorneys that would relate to the lulling letter issues." See Docket No. 61 at 2.

During his deposition, trial counsel was asked how he approached developing a reliance on advice of counsel defense. When asked to explain the choice not to call any attorneys as to the lulling letter counts, trial counsel outlined his strategy:

> It was apparent that I was not going to be able to use the two attorneys [Meltzer and McManis] in the lulling letter cases. However, I wanted to continue to attempt to persuade the Court that I should be at least able to reflect that Mr. Bowman had utilized attorneys in his business and that he continued to utilize attorneys throughout, and I was trying to argue to the Court that at least allow me to make this argument as part of the good-faith effort that he utilized attorneys in a general sense.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

/////

/////

/////

/////

/////

> I was expanding a good-faith defense to try to incorporate the utilization of attorneys, but without having to disclose their names and the communications.[3]  And that was the problem I was having. So that's how I attempted to broaden my ability to represent Mr. Bowman.

Samuel Dep. Tr. at 56-57.  The decision to not call as witnesses any of the attorneys involved in or consulted on the lulling letter was made by trial counsel only after he analyzed what they did and how they were going to testify.  Id. at 67.

During the discovery hearing before the magistrate judge, trial counsel informed the court that McManis was refusing to talk to the defense.  Pet., Ex. H at 2.  When trial counsel finally spoke to McManis, the attorney was hostile.  Samuel Dep. Tr. at 74:5-10.  McManis told trial counsel that movant created the lulling letter and that the corrections McManis made were only of "grammatical kind of errors."  Id. at 75:4-6.  Trial counsel inquired if McManis did his own research into whether the statements in the letter were truthful or factual independently of what movant told him.  In doing so, trial counsel noted that the letter contained an untruthful statement regarding Lloyd's of London and movant had already been told at that time to cease and desist making claims that Lloyd's provided insurance.  Id. at 75, 109, 117.  McManis said he relied solely on representations made to him by movant.  Id. at 75, 109.  Trial counsel believed that this "gutted our defense" of reliance on counsel because movant's credibility was at issue, and thus he determined to not call as a witness an attorney who would testify that movant lied to him.  Id. at 75:20-76:24.  Trial counsel believed movant could not win a credibility contest against his attorneys under such circumstances.  Id. at 110, 112:1-5.

/////

/////

---

[3] Trial counsel candidly admitted he did not think there was authority "to intertwine the utilization of an attorney in the good faith defense;" but he was trying to blend the "reliance on counsel" and "good faith" defenses without having to supply discovery identifying attorneys and related information, because he felt that disclosure would be harmful.  Samuel Dep. Tr. at 80: 7-17.

For a court to give a "reliance on advice of counsel" instruction, a defendant must show he made full disclosure to an attorney of all material facts, and that he relied in good faith on a specific course of conduct recommended by the attorney. See, e.g., United States v. Ibarra-Alcarez, 830 F.2d 968, 973 (9th Cir. 1987). Trial counsel had determined through his investigations that the two attorneys, if put on the stand, would testify they did not perform any independent due diligence as it related to the content of the letter; rather, they relied on movant's factual representations and simply rewrote the letter in a grammatically correct form. Such testimony from the attorneys would make movant ineligible for an "advice of counsel" instruction. It would also greatly damage movant's credibility in a case that would stand or fall on how credible the jury found him to be. Movant's current counsel has not shown this court that trial counsel's conclusions as to how Meltzer and McManis would testify if called during trial were unreasonable. Trial counsel's tactical decision to abandon the "reliance on advice of counsel" defense fell within the wide range of reasonable representation and did not deny movant effective assistance of counsel.[4]

Movant now argues there were sufficient supporting documents to show reliance on attorneys without the need of putting the attorneys on the stand in movant's defense case in chief. See Traverse at 47. As movant notes, if the documents had been introduced, the government could and presumably would have called the two attorneys on rebuttal and the same damaging testimony that convinced trial counsel to abandon the "advice of counsel" defense

---

[4] Movant also alleges defense counsel waited two years and seven months before he began investigating and considering the reliance on advice of counsel defense to bolster his claim that trial counsel was ineffective. Traverse at 45; see also Samuel Dep. Tr., Exs. 34-35. However, movant long had had an antagonistic relationship with Meltzer and McManis. See, e.g., Samuel Dep. Tr. 205:8-13 (movant sued the two attorneys for malpractice in August 1999, only shortly after trial counsel Samuel was appointed to represent him). No evidence has been presented to convince the court that Meltzer and McManis would be less likely to give damaging testimony if trial counsel had begun his investigation into a defense based on reliance of the advice of counsel sooner. Absent a showing of how the "delay" actually prejudiced movant's defense, movant's mere allegation that trial counsel took too long to begin preparing the reliance on advice of counsel defense, even if true, does not change the outcome here.

would be heard by the jury.  While movant is confident now that the ability to cross-examine Meltzer and McManis "would have devastated any possible claim by the [attorneys] that they did not provide substantive legal advice to Bowman . . .," id. at 47:13-14, such confidence is easily mustered after the fact.[5]  And such mere conclusory assertions do not persuade this court that trial counsel was objectively unreasonable in concluding that the potential damage to the defense of his client was too great to take that chance.

      C.  <u>Failure to Present Evidence of Attempts to Obtain New Guarantor</u>

Movant next argues his client was denied effective assistance of counsel because trial counsel did not present evidence of the attempts by movant and others to obtain a new guarantor, beyond Lloyd's of London, to protect the interests of the TKG noteholders.  Pet. at 19.  Movant asserts, given the government's allegation in the superseding indictment that fraudulent activities began in August 1996 and continued through August 28, 1998, that efforts by movant to obtain other insurance "would be direct as well as circumstantial evidence of movant's lack of intent to defraud anyone."  Traverse at 48.  Specifically, he alleges trial counsel was deficient in his representation because he failed to present evidence that a guarantee was successfully obtained from a company known as Financial Capital Company of America (FCCA), and then cancelled due to no fault of movant.  Pet. at 20.

On January 16, 2002, the government filed a motion to exclude evidence regarding movant's alleged attempts to secure reinsurance for TKG notes through FCCA in the summer of 1998.  The motion argued that FCCA reinsurance evidence should be excluded because the alleged efforts to obtain reinsurance did not begin until approximately July 1998,

---

[5] Movant's declaration represents he paid each attorney $125,000, in lump sums toward the beginning of their representations.  Decl. of David Bowman ¶¶ 4-7.  The declaration also describes the preparation of the May 25th letter and confirms that movant drafted it and a "corrected copy" of the draft was returned to him by Mr. McManis within a day.  Id. ¶¶ 22-27.  The billing statements of the two attorneys, while identifying meetings around the time of the letter, do not reflect a significant amount of time spent reviewing the letter itself.  In particular, only one attorney billed a total of .70 hours for reviewing and revising the letter on May 22nd.  Pet., Exs. X, Y.

whereas the fraud was complete when the lulling letter was sent on May 25, 1998.  See Pet., Ex. R.  The instant motion describes the events that transpired after the government filed its motion as follows:

> Defense counsel Samuel never filed a written response to the government's motion on this issue.  What makes this particularly egregious is that defense counsel Samuel prepared a response to the government's motion.  In defense counsel Samuel's unfiled response to the government's motion, Samuel attached a chronology which indicated that efforts by defendant Bowman to obtain a new guarantee had begun in March of 1998. . . .  However, defense counsel Samuel's response was never filed.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . Given the fact that defense counsel Samuel did not file a written response, Judge Burrell was left with no choice but to rely solely on the government's brief. . . . . .
>
> A separate and significant consequence of defense counsel Samuel's failure to develop this issue regarding defendant Bowman's attempts to secure a new guarantee bond from a non-Lloyd's source resulted in effectively precluding the defense from introducing any post-May 25, 1998 evidence at trial.  This was the case despite the fact that the government's superceding indictment alleged that Bowman's fraud began in August 1996 and continued through August 28, 1998.

Id. at 20-21 (citations omitted; emphasis in original).  A careful examination of the record reveals there is no support for this version of the events.

The first discussion on the record of the government's January 16 motion can be found in the trial transcript for Thursday, January 17, 2002.  RT 791-794.  Trial counsel informed the court he had not yet had an opportunity to prepare a response.  RT 792.  The parties and the court then agreed that the hearing on the reinsurance issue would be held on Tuesday, January 22, 2002, and that trial counsel would fax his opposition to the district judge's chambers by 9 a.m. on Monday, January 21, 2002.  RT 793-794.

At the outset of the January 22 hearing regarding the government's motion to exclude reinsurance evidence, the court noted that, "I received – I believe I've received your fax Mr. Samuel.  It states, 'Defendant's Response Re: Post May 25, 1998 Conduct and Action to

Ensure Bond Coverage.' Is that what you sent?" Trial counsel responded, "Yes, Your Honor. I have an extra copy to file if the Court wishes." Based on the briefing by both parties and further oral argument, the judge ruled that evidence of reinsurance would be excluded based on Federal Rule of Evidence 403 balancing considerations. RT 982-987.

In his traverse, movant asserts, "An examination of Exhibit S reveals an offer of proof which included facts, law, discussion and chronology. . . . [T]his is exactly the type of information which should have been presented by Samuel . . . to support Bowman's position that he never intended to defraud anyone during any part of the time period alleged in the Superceding Indictment." Traverse at 49. While it appears trial counsel's opposition was never filed on the court docket, a fair reading of the record as a whole reflects that the court did in fact consider the opposition before granting the motion to exclude. Pet., Ex. S; cf. RT 981:8-20.[6] Movant was not denied effective assistance of counsel with regard to exclusion of the evidence of reinsurance.

### D. Failure to Adequately Prepare and/or Utilize Defense Witnesses

The final area of alleged ineffective assistance of counsel is trial counsel's use and preparation of defense witnesses. The motion identifies three distinct categories of witnesses for the court to consider in evaluating whether trial counsel's performance was deficient: (1) witnesses who were available but not subpoenaed by the defense, (2) witnesses who were subpoenaed by the defense but did not testify, and (3) witnesses who actually testified for the defense.

With regard to the first two categories of witnesses, movant cannot bear his burden of showing ineffective assistance of counsel by presenting "mere conclusory statements," United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984); rather he must tender affidavits

---

[6] At deposition, trial counsel was unable to recall how the opposition was handled or why it does not appear on the docket of the case, but none of the counsel's deposition testimony changes the conclusion reached here. Samuel Dep. Tr. at 126:8-130:10.

from the witnesses counsel neglected to interview or call, showing the "helpful testimony for the defense" they could have presented. Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000). Movant has not provided any affidavits from witnesses that did not testify at trial and mere reliance on trial counsel's recollection as to what their testimony might have been is not sufficient to show prejudice. See Traverse at 52-55; cf. Samuel Dep. Tr. at 137-151.

As to the witnesses that were called to testify, only those claims relating to the decisions to call Richard Vucenic and movant himself warrant consideration. The other witnesses all were called in an attempt "to show that there was a legitimate investment situation, and it was to gain, hopefully, credibility with the [investment] concept that [movant] was putting forth when he was selling these notes." Samuel Dep. Tr. at 162-170. During the deposition, counsel asked how movant's "making investments in companies that [didn't] succeed help your client, when he's using other people's money to give to them?" Trial counsel responded that these witnesses

> supported his [movant's] total package presentation. He said that this is what he was going to do, and one of the things he said he was going to do was to invest in companies. . . . And we established that he did invest in companies and he did get back a benefit.

Id. at 164. In light of this explanation, the decision to call the witnesses, other than Vucenic and movant, was conduct "within the wide range of reasonable professional assistance."

Richard Vucenic was on the government's witness list, but was not called to testify in the prosecution's case-in-chief. Pet. at 22. Prior to being called to testify as the first witness for the defense, Vucenic had pled to a similar fraud; as part of his plea the government agreed to request a downward departure at sentencing for his cooperation.[7] Id., Ex. BB. While

---

[7] The government recommended only a 25 percent instead of the standard 50 percent downward departure because it did not think Vucenic was completely truthful in his cooperation. Pet., Ex. BB at 2. Trial counsel appropriately used this to impeach Vucenic's credibility on direct examination. See RT 1005-1006. Thus, movant's argument that "[f]or defense counsel

14

movant now maintains that "Vucenic's testimony was devastating to movant's case," Pet. at 22, that statement is aimed almost exclusively at one particular piece of testimony, that movant wanted bonds or reinsurance only as "window dressing." See Samuel Dep. Tr. at 157:15-158:6; RT 1011, 1066, 1071.

During his deposition, trial counsel had the opportunity to explain in detail his decision to call Vucenic as a witness. The defense had been unable to interview Vucenic before putting him on the stand because he was avoiding them. Samuel Dep. Tr. at 156. However, trial counsel felt calling Vucenic was necessary to lay the foundation for all the documents and communications received through him. Id. The theory counsel wanted to present to the jury was that Vucenic swindled movant and everyone else. Id. at 156-157.

Counsel believed "he could control him [Vucenic] and manage [his testimony] with the documentation" that was in trial counsel's possession. Id. at 158, 198. Because counsel had determined the best way to defend his client was to make him a victim, the only person who could have victimized movant was Vucenic, who "was the only source of the alleged Lloyd's of London material." Id. at 159. Counsel was aware of the risk of putting Vucenic on the stand, but did not feel it was a major one because the chronology of the documents helped demonstrate Vucenic was lying to movant. Id. Viewed in this light, the decision to call Vucenic to testify was a reasonably calculated trial tactic, even if it ultimately failed, and did not constitute deficient performance.

Finally, movant posits he was denied effective assistance of counsel because trial counsel failed to properly prepare movant for his own testimony. See Pet. at 22-23.[8]

---

Samuel to call Vucenic as a witness for the defense, when Vucenic was cooperating with the government, was irresponsible and demonstrates a lack of proper preparation in developing and presenting [movant's] defense," Pet. at 22, does not hold up.

[8] In his traverse, movant presents a related but separate issue, arguing trial counsel's failure to provide effective assistance in other areas (evidence of CPF, reliance on advice of counsel defense, and evidence of reinsurance) significantly undermined movant's ability to testify in his defense. Traverse at 60. To the extent the traverse raises a new argument that is

15

With respect to the alleged lack of preparation, movant and trial counsel present contrasting accounts. See Samuel Dep. Tr. at 171-174; Decl. of David Bowman ¶¶ 39-42. The court need not resolve the issue of which account is accurate, because movant has failed to carry his burden of showing prejudice. Other than mere conclusory statements, movant has provided no evidence to establish the specific ways in which the lack of preparation affected his testimony to such an extent as to show a reasonable probability of a different outcome. See Pet. at 23; Traverse at 60-61.

This claim too should fail.

III. Ground Two: Accumulation of Counsel's Errors

Because none of the errors addressed above warrant relief, movant's request for relief based on cumulative error also is unavailing. Pet at 26-27; cf. Harris v. Wood, 64 F.3d at 1438-39 (recognizing that prejudice may result from the cumulative impact of multiple deficiencies in counsel's assistance in the post-Strickland era).[9]

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Movant's 28 U.S.C. § 2255 motion be denied; and

2. The clerk of the court be directed to close the companion civil case No. CIV S-04-367 GEB KJM P.

/////

/////

---

considerably different from the one contained in the original motion, it will not be considered by this court. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (additional claims or grounds for relief may not be raised in a traverse). Even if the court were to consider the new argument, movant could not show prejudice because the court has found that none of the other circumstances that movant alleges undermined his ability to testify were the result of ineffective assistance of counsel.

[9] The petition identifies this ground for relief as "The Overall Effect of the Accumulation of Errors by Defense Counsel Samuel Resulted in a Denial of Defendant Bowman's Right to Due Process and His Right to a Fair Trial," relying on United States v. Frederick, 78 F.3d 1370 (9th Cir. 1996). See § 2255 Mot. at 26. That case, however, addressed the cumulation of different kinds of trial errors in the context of harmless error analysis. See Frederick, 78 F.3d at 1381.

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time waives the right to appeal the District
8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: June 5, 2009.

_____
U.S. MAGISTRATE JUDGE

1/ar
bowm0205.257